TIMOTHY W. HOXIE *vs.* THE HOME INSURANCE COMPANY.

In an action on an insurance policy, the defendants, for the purpose of showing a fraudulent loss of the vessel insured, introduced evidence that the plaintiff had procured nine other vessels insured of which eight had been lost. The plaintiff then offered evidence to show that the companies by which the vessels had been insured had paid the claims for the loss without objection on the ground of fraud. Held inadmissible.

A protest had been filed with a consul of the United States by the master of a vessel that had sustained injury at sea. In a suit on a policy of insurance on the vessel the plaintiff offered the protest in evidence, but it was excluded by the court on objection of the defendants. In his closing argument to the jury the plaintiff's counsel attempted to state some of the contents of the protest, and on objection by the defendants' counsel was allowed by the court to proceed, on the ground that such protests usually set forth the particulars of such a casualty, and that in the circumstances the plaintiff was entitled to any fair inference from the general character of the paper and the refusal of the defendants to have it read. Held to be error and a new trial granted.

ASSUMPSIT, on a policy of insurance on a vessel, brought in the superior court for New Haven county. A new trial having been granted in the case at a former term of this court, (32 Conn. R., 21,) it was again tried to the jury before *Phelps, J.*, and a verdict rendered for the plaintiff. The defendants moved for a new trial for errors in the rulings of the court. The case will be sufficiently understood from the former statement of the facts and from the opinion of the court.

*Blackman* and *Doolittle*, in support of the motion.

*Beach* and *C. R. Ingersoll*, contra.

PARK, J.   We shall consider but two of the many questions raised in this case in expressing the reasons for the conclusion to which the court has come, that a new trial ought to be granted.

During the trial of this cause the defendants, for the purpose of proving the fraudulent combination between the plaintiff and James H. Prince, set forth in their notice under the general issue, offered to prove by the plaintiff that during the period of time intervening between the commencement of the year 1857 and the year 1861, the said Prince was interested as owner in nine vessels besides the one in question; that the plaintiff had made advancements on all the vessels or their cargoes; that he had taken mortgage security thereon; that he had his interest thus arising insured, and that eight of the nine vessels had been abandoned to the underwriters.  The plaintiff objected to the reception of this evidence, but the court very properly admitted it, (*Hoxie* v. *Home Insurance Company*, 32 Conn., 21,) and thereupon the plaintiff claimed the right to prove in what insurance companies the policies were procured, and that the losses had been paid to the plaintiff by the companies without any claim of fraud.   To this proposed evidence the defendants objected, but the court admitted it; and herein we think the court erred.

The proposed evidence is based upon the consideration that no fraud existed in each particular case because each company was satisfied for itself of its non-existence.   But would the opinion or judgment of the company be proper evidence to be received upon the question before the jury, whether fraud in fact existed in such case or not, so as to affect the rights of the parties in this case ?   Each company had the right to decide for itself the question of fraud, so far as it was interested, but such decision cannot be received as evidence of the truth of the fact, so as to affect other parties who have an interest in the same question.   Such parties have the right to try the case *de novo*, and as to them the opinion of the company should have no greater legal effect than the opinion of any other party out of court.   If the officers of each company knew facts pertinent to the issue their evidence could have

Hoxie *v.* Home Insurance Company.

been procured, but if they were present in court they would not be permitted to express an opinion upon the whole case, but would be confined to facts within their knowledge, and leave to the jury the determination of the question whether fraud existed in such case or not. If their opinion in court could not be received as evidence between these parties, much more should the proposed evidence be rejected, for the mere fact that they paid the losses without making a claim of fraud against the plaintiff does not necessarily show that they ever passed upon the question of fraud. If fraud existed in those cases it is fair to presume that the parties engaged in it concealed the facts from the companies as far as possible, and thus deprived them of the means of knowledge on the subject, and they may, therefore, have paid the losses in ignorance of the fraud.

These considerations apply with greater force to the remainder of the evidence offered by the plaintiff and admitted by the court in this branch of the case ; for the parties who employed the masters of these vessels to sail other vessels from the port of Boston, could have had at the most but limited means of knowledge on the subject whether they had been guilty of fraud in their management of these vessels. The mere fact that the insurance companies had paid the losses without complaint, would be sufficient of itself to destroy all suspicion that rumor might create.

But the proposed evidence when considered in the strongest light possible for the plaintiff, amounts to no more than this— that in the opinion of the employers of these men the character of each for honesty was good. We have seen that an opinion in relation to a question like this, whether expressed in or out of court, is not proper evidence to be received, and should have been rejected.

Another claim for a new trial which we shall consider is in relation to the course pursued by the counsel for the plaintiff in the closing argument to the jury.

On the trial in the court below a serious question was made between the parties, whether the vessel in question was sea-worthy when she left Perth Amboy. When the vessel

arrived at Bermuda it was found that she had six broken knees, and it seems to have been conceded by the plaintiff that, if the knees were broken when the vessel left Perth Amboy, she was unseaworthy, and hence the question of seaworthiness turned upon the question whether the knees were broken on the voyage to Bermuda.

The plaintiff in support of his claim, with other evidence, offered a protest filed by the master of the vessel with the United States consul at Bermuda, accompanied with evidence that a protest of this description usually contains a detailed statement of everything of note that happens to a vessel on her voyage, in which an injury has been sustained. The defendants objected to the reception of the protest in evidence, and it was excluded by the court. In the closing argument to the jury the counsel for the plaintiff, after pointing to a bundle of papers upon the table, said, " There is a document in that bundle of papers which tells all about those broken knees. That document is a deposition of Lemuel Friend, which has a protest attached to it which was taken before the United States consul at Bermuda, and which the defendants know all about, and to the introduction of which they objected ; and it will be torn from the deposition, which will be sent to you in a mutilated form." At this point the defendants' counsel objected to the train of argument pursued by the plaintiff's counsel, and appealed to the court to restrain the counsel from stating to the jury the contents of a document that had been excluded by the court, and arguing his cause therefrom. The court ruled " that under the circumstances, the character and contents of such documents generally having been shown, and this particular paper having been offered by the plaintiff and excluded, and being within the power of the defendants if they pleased to offer it themselves, their declining to do so entitled the plaintiff's counsel to comment upon it in such a way as to take advantage of any inference that might be drawn from the fact that it was a paper of the class that usually sets forth the particulars of the casualty which happened to the vessel, and that the defendants had declined and were unwilling to present it to

the jury." And thereupon the plaintiff's counsel proceeded and said to the jury : " That document had been furnished to the defendants, and could have been offered in evidence by them, and if offered would have explained the particulars of the casualty, and furnished a satisfactory explanation of the fact that the vessel, when examined at Bermuda, had six broken knees."

Under these circumstances it is easy to see that the statement of the counsel had all the effect upon the minds of the jury that the protest itself could have had, had it been received in evidence, and had it contained the particulars of the casualty, and given a satisfactory explanation to the jury of how the vessel came by the six broken knees. This statement was given to the jury under the ruling of the court. If the court had not been required to restrain the counsel from making the statement, the jury might have disregarded the account; and treated it as coming from counsel in the heat of debate in relation to a matter excluded by the court; but when the court was formally appealed to in the presence of the jury, and a decision rendered allowing the counsel to proceed in his statement, the jury were given to understand that they should consider the relation in the decision of the case. The statement could have been made for no other purpose than to induce the jury to believe that the account was true, and under the circumstances of the case it is more than probable it had that effect. Thus, under the ruling of the court, the counsel for the plaintiff was allowed to present to the jury what were claimed to be the contents of a document not in evidence ; and we know of no law, practice, or discretion, that will justify such a course. If the protest was improperly rejected by the court it cannot be said that the statement could have done the defendants no harm. We know nothing in relation to its contents, and it would be unsafe to take the representation of counsel in the closing argument to the jury for the document itself. We advise a new trial.

In this opinion the other judges concurred, except Mc-Curdy J., who having tried the case in its first hearing before the superior court, did not sit.