Argued 20 Nov.; decided 26 Dec., 1899; rehearing denied 26 Feb., 1900.

## OYLER *v.* DAUTOFF.

[59 Pac. 474.]

1. EVIDENCE OF JOINT CONVERSION.—There is evidence of withholding of pos-
session from plaintiff by M, as well as D, her husband, on testimony that,
after plaintiff's trunk and contents were sold for a board bill by her landlady
to D, a secondhand dealer, witness saw M taking out the contents at D's
store, and told her that plaintiff would redeem, and offered to buy them, but
M refused, saying she wanted them for her girl, and that plaintiff's attorney
demanded the stuff of D and M, and made tender to them, and they refused
to turn it over or to take the money.

2. COMPETENT CORROBORATIVE EVIDENCE.—For the purpose of corroborating
plaintiff in an action for her trunk and contents, she having described the
same, a witness who had been called in by plaintiff, a short time previous to
the taking, to insure the same, and who had examined the contents for that
purpose, may testify to the contents then seen.

3. WITNESS—REFRESHING MEMORY FROM MEMORANDUM.—Under Hill's Ann.
Laws, § 836, providing that a witness may refresh his memory by anything
written under his direction at any time when the fact was fresh in his mem-
ory, and he knew that the same was correctly stated in the writing, a witness
may, while testifying in an action to recover the contents of her trunk, use
what she swears is a correct list of the articles which she knew were in the
trunk, made by her some two months after the trunk was taken, and soon
after she found defendants had it.

4. TRIAL—SHOWING AS TO EXPECTED ANSWER.—Exclusion of a conversation
cannot be considered error, when there is nothing to show its purpose.

5. REBUTTAL—COMPETENT EVIDENCE.—Testimony by defendants, in an action
to recover a trunk and its contents sold for a few dollars by plaintiff's land-
lady for her board, that the landlady knew plaintiff had money, tends to dis-
credit plaintiff's testimony that the contents were of considerable value, so
that on rebuttal plaintiff may testify that she did not have money to redeem
the trunk.

From Multnomah :   E. D. SHATTUCK, Judge.

Action by Cora Oyler against Israel and Mary Dautoff,
in replevin, resulting in a judgment for plaintiff.

                                        AFFIRMED.

For appellants there was a brief over the name of *Joseph
B. Thompson*, with an oral argument by *Mr. D. Solis
Cohen*.

For respondent there was a brief over the name of *Chamberlain & Thomas*, with an oral argument by *Mr. Warren E. Thomas*.

Mr. Chief Justice Wolverton delivered the opinion.

1. This is an action for the recovery of personal property, consisting of a trunk and a large number of items of wearing apparel, jewelry, and other articles contained therein, of the alleged value of $420. Judgment was for plaintiff, and the defendants appeal. At the close of plaintiff's testimony, the defendants moved for a nonsuit as to both, and as to Mary separately. In so far as the motion relates to Israel, it is evidently without merit, as it is clear he was in possession of, and exercising acts of ownership over, the property prior to and at the time the action was instituted. In brief, the evidence shows that the property in dispute was retained by Mrs. Hotchkiss, the landlady of a lodging house, as security for a small bill against the plaintiff for lodging and meals; that it was sold by Mrs. Hotchkiss at auction, in order to secure the amount of the bill; and that the defendant Israel Dautoff, who was a secondhand dealer, became the purchaser, and took the property at once to his store, where the trunk was opened, and its contents placed upon the shelves for sale, where some of the property was found and recognized by plaintiff. Mary Dautoff is the wife of Israel, and, as bearing upon her responsibility for the retention of the property, S. E. Catterlin, who was present when the trunk was opened and the goods were being removed, testified as follows: "I remember Mrs. Dautoff taking the stuff out of the trunk, and when she had taken it out there was a lot of pictures," etc. And again: "When the trunk was opened first, I told Mrs. Dautoff that it was very valuable, and I thought the lady would redeem it, and would offer

them the price they gave for the contents of the trunk. I told her the lady would redeem it, and that I would give her the price paid for it, and let me have the stuff, and let them keep the trunk ; and she made the remark that she would not sell it for anything. She wanted some—I don't remember what it was she picked up. She said she would not sell it for anything. She wanted it for her little girl. She would make her little girl some dresses. I do not remember what it was. It was something to that effect. She would have this for her little girl, and gave the daughter's name, but I cannot recall it now. I do not remember what it was. She refused to sell the stuff.'' Mr. W. E. Thomas testified : ''The first time I found Mrs. Dautoff there in the store, I merely inquired for Mr. Dautoff. He was not in. The next time I went down there he was not in. I then asked her to send Mr. Dautoff to my office in reference to this matter.   *   *   *   I made a demand on the 28th day of May, 1897, of Mr. Dautoff for this stuff, and tendered him $8.20. That was in my office. I then went down to the store, and demanded of Mrs. Dautoff the possession of the stuff, which was in the store all this time. I tendered her the amount, and they refused to turn over the stuff, and refused to take the money.'' There is here some testimony from which the jury could draw an inference that Mrs. Dautoff was also in possession and exercising acts of ownership over the property, and from which they might find that she, as well as her husband, was retaining and withholding possession thereof from the plaintiff. It is not a question as to what the court would or should have done if left to find the facts, but whether there was any competent testimony submitted to the jury from which they might reasonably deduce the fact that Mrs. Dautoff was with-

holding possession from the plaintiff. We think there was, and the motion for nonsuit was properly overruled.

2. After plaintiff had given her testimony, to the effect that she went to lodge at the house of Mrs. Hotchkiss, on January 2, 1897, and left on February 5, and that she was then in possession of the property in question ; that the trunk contained nearly everything she had, and that she left it with the landlady when she went away,—she called a witness named Schlussel, a real estate, loan, and insurance agent, who, among other things, stated : ''I know the plaintiff. I know what property she possessed contained in a certain trunk described in her evidence. I saw those articles at the rooming house of Mrs. Hotchkiss, on the corner of First and Morrison streets. Mrs. Oyler desired to insure her wearing apparel, and she wanted, as I thought at that time, quite excessive insurance on the articles, and for that reason I desired an inspection, and upon inspection I could readily see she was entitled to cover them for the amount she wanted—$500. I saw pretty much all the contents of the trunk. The fore part of this year or the latter part of 1896 I saw it. It could not have been far off from January or February. It was while she was at Mrs. Hotchkiss' house.'' He was then told to state what he saw, to which direction an objection was interposed, and, on being overruled, an exception saved. The witness continued: ''Well, I might term it, I saw a complete trousseau ; in fact, it was a marriage trousseau. I saw the contents of her trunk— a very elaborate trousseau at that, and very expensive. There were a great many silk undergarments, and the wearing apparel in general was far above the ordinary. * * * They were well worth the amount she desired to cover the trunk, for the trunk was a large trunk.'' The defendants complain of this testimony, upon the ground that it was incompetent to show plaintiff had the

property so long prior to the time it was alleged to have been taken from her. The purpose, however, was to corroborate the plaintiff in her statement that she actually possessed the goods previous to the alleged taking. There is sufficient in the witness' testimony to indicate that he saw the same trunk, goods, and articles which the plaintiff had previously described in her testimony, and for the purpose of corroboration the testimony was pertinent, and therefore properly admitted.

3.   When the plaintiff went upon the stand, she had in her hand a typewritten memorandum, touching which she testified preliminarily that it was a correct list of the articles in question ; that she made it ; that she did not do the typewriting work, but that she made the list out for the typewriter ; that the typewritten list had been compared by her with the original ; that it was a correct list of the articles which she knew to be contained in the trunk ; that it was made soon after she found the defendants had the trunk in their possession, the last of April ; that she put down the items as she recalled them, and in that manner the list was made up.   Thereupon the witness was permitted, over the objection of defendants, to use it while testifying, and this is assigned as error.   By the statute (Hill's Ann. Laws, § 836), "a witnesss is allowed to refresh his memory, respecting a fact, by anything written by himself, or under his direction, at the time when the fact occurred or immediately thereafter, or at any other time when the fact was fresh in his memory, and he knew that the. same was correctly stated in the writing."   The examination shows that the witness was clearly within the rule.   The memorandum was made while her recollection was fresh touching the articles contained in the trunk.   Mr. Bradner says :   "In cases requiring many details of duty, quality, etc., it is proper to allow a witness to consult, but not to read from, memoranda made

by him of facts within his own knowledge, to which he cannot speak in sufficient detail without such aid, although the memoranda were made in preparation for trial. That is to say, a witness may use a memoranda, or any book or paper, to refresh his memory, if he can afterwards swear to the fact from recollection ; but if he cannot so swear, otherwise than as finding it in the book, then it must be produced :'' Bradner, Ev. p. 308. Under this authority, as well as under the statute, there was no error in permitting the witness to use the list while testifying.

4. While Mr. M. J. MacMahon was on the stand as a witness for defendants, he testified that Mrs. Hotchkiss, with some other person, came to his office, and said they held a trunk for board and lodging, and wanted to know if they could sell it ; whereupon objection was made to the witness relating any conversation that he had with Mrs. Hotchkiss. This was sustained, and error is predicated upon the ruling of the court. Thereafter the witness was permitted to relate what instructions he gave her touching the course to be pursued in disposing of the property. Further than this there is nothing in the record showing what the purport of the conversation with Mrs. Hotchkiss was, and hence we are unable to determine whether any injury was done the defendants in not permitting the evidence to go to the jury. No error is therefore manifest, and the assignment cannot be said to be well taken.

5. The plaintiff, on direct examination in rebuttal, was asked the following question : ''There has been testimony here about your having plenty of money to redeem this trunk. I will ask you to state what your condition was as to being able to redeem the trunk,''—to which objection was made upon the ground that it was not proper rebutting testimony. The court ruled adversely, and the witness answered : ''I was not able to

redeem the trunk." The ruling of the court in this re-
spect is assigned as error. The purpose of this testimony
was to rebut the statement of Mrs. Hotchkiss, a witness
for defendants, drawn out by their counsel on examina-
tion in chief, as well as by the cross-examination, to the
effect that she knew plaintiff had money, that she had
$500 in diamonds and bracelets on her person. That
plaintiff's testimony tended to rebut that of Mrs. Hotch-
kiss there can be no question. But it is claimed that
Mrs. Hotchkiss' testimony was wholly irrelevant and in-
competent; hence that it was improper to permit the
plaintiff to rebut it in that way. The rule is that the
giving of irrelevant evidence by one party does not en-
title the other to go into evidence in reply to it: *Donelly*
v. *Curran*, 54 Cal. 282. But it does not occur to us that
Mrs. Hotchkiss' testimony was entirely irrelevant. It
certainly tended to discredit the plaintiff's statement upon
the subject of values; for, if she had plenty of money,
it is a fair deduction that she would not have let such
valuable property go to sale for so small a bill. The ac-
tion was not for damages that the financial condition of
the plaintiff would conduce to increase or diminish, but
for the title and right of possession or value of the prop-
erty in dispute. In this view, the rebutting testimony
was properly admitted.

Another question was mooted touching an alleged
want of tender by plaintiff of the amount paid by the
defendant Dautoff for the property when demand was
made therefor, and of keeping the tender good by bring-
ing the money into court. But the question whether or
not the sale was regularly made, under the statute, was
left to the jury, and they having found, as shown by
the general verdict, that it was not, the tender was ren-
dered immaterial. These considerations affirm the judg-
ment of the court below, and it is so ordered.     AFFIRMED.